IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION IN CINCINNATI

| | |
|---|---|
| HEARD, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> NIELSON, et al, <br><br> Defendants. | CIVIL ACTION <br><br> CASE NO. 1:16-cv-1002 <br><br> JUDGE TIMOTHY S. BLACK |

## ORDER OF DEFAULT JUDGMENT
## AGAINST DEFENDANTS SUSAN JOHNSON AND MARTIN NIELSON

This action is before the Court on Plaintiffs' Motions for Default Judgment against co-Defendants JOHNSON and NIELSON (Doc. Nos. 19 and 25).

### I. PROCEDURAL HISTORY

On October 14, 2016, the Plaintiffs filed a Complaint in the United States District Court for the Southern District of Ohio, Western Division against the Defendant MARTIN NIELSON ("Defendant NIELSON"), Defendant SUSAN JOHNSON ("Defendant JOHNSON") and Defendant PAUL HAFT[1] ("Defendant NIELSON and Defendant JOHNSON will be collectively referred to as "Defendants") (Doc. No. 1). The Complaint alleges that Defendants, violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15, and the Ohio Constitution, Oh. Const. Art. II § 34a.

Service was successfully executed on Defendant JOHNSON on December 20, 2016 (Doc. 14). Plaintiffs were granted an extension of time to until April 12, 2017, to serve Defendant NIELSON (*See* Doc. 15, *and* Notation Order dated 1/12/17).

Upon the expiration of the twenty-one (21) day period specified on the Summons, January

---

[1] On November 11, 2016, Defendant HAFT was dismissed by stipulation and without prejudice (Doc. 10).

1

10, 2017, Defendant JOHNSON had not filed an Answer to the Complaint with the Clerk of this Court or upon the Plaintiffs; nor had she otherwise defended. Plaintiffs filed a Request to Enter Default on January 13, 2017 against Defendant JOHNSON (Doc. 16). That same day, the Clerk filed an Entry of Default against Defendant JOHNSON, because she had failed to appear, plead or otherwise defend as provided by the Rules of Civil Procedure (See Fed. R. Civ. P. Rule 12(a)(1)(A) *and* Doc. 17). The Clerk instructed the Plaintiffs to file a motion for default judgment within twenty-one (21) days. (Doc. 17). A Motion for Default Judgment was filed by the Plaintiffs on February 3, 2017 (Doc. 19).

Service was successfully executed on Defendant NIELSON no later than February 16, 2017 (Docs. 22 and 22-1). Upon the expiration of the twenty-one (21) day period specified on the Summons, March 13, 2017, Defendant NIELSON had not filed an Answer to the Complaint with the Clerk of this Court or upon the Plaintiffs; nor had she otherwise defended. Plaintiffs filed a Request to Enter Default on March 14, 2017 against Defendant NIELSON (Doc. 23). On March 16, 2017, the Clerk filed an Entry of Default against Defendant NIELSON, because he had failed to appear, plead or otherwise defend as provided by the Rules of Civil Procedure (See Fed. R. Civ. P. Rule 12(a)(1)(A) *and* Doc. 24). The Clerk instructed the Plaintiffs to file a motion for default judgment within twenty-one (21) days. (Doc. 24). A Motion for Default Judgment was filed by the Plaintiffs on March 29, 2017 (Doc. 25).

## II. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default

under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-298, 2010 U.S. Dist. LEXIS 86241, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

While liability may be shown by well-pleaded allegations, the Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 U.S. Dist. LEXIS 62027, at *5 (E.D. Mich. June 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.*, No. 2:07-cv-990, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio Mar. 12, 2010).

### III. ANALYSIS

Defendants having defaulted, the factual allegations in the complaint, except those related to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). To ascertain an uncertain sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12cv962, 2012 U.S. Dist. LEXIS 116166, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. 2:06-cv-487, 2007 U.S. Dist. LEXIS 3118, at *2 (S.D. Ohio Jan. 16, 2007). Here, the Court finds that an evidentiary hearing is unnecessary.

Plaintiffs assert violations of the minimum wage and overtime provisions of the FLSA and Ohio law. The FLSA requires covered employers to pay its employees a minimum wage of $7.25

per hour and overtime compensation for hours of work exceeding 40 in a workweek at a rate of one and one-half times an employee's regular rate of pay. 29 U.S.C. §§ 206(a), 207(a)(1). Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions. Ohio Const. Art. II, § 34a; Ohio Rev. Code §§ 4111.02-.03. Accordingly, the claims may be analyzed together. *Thomas v. Speedway SuperAmerica*, LLC, 506 F.3d 496, 501 (6th Cir. 2007).

A covered employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under Department of Labor regulations, an employee may be jointly employed by two entities [or persons], each of which is responsible for complying with the FLSA. 29 C.F.R. § 791.2; *Skills Dev. Servs., Inc. v. Donovan*, 728 F.2d 294, 301 (6th Cir. 1984).

"The issue of joint employment for the FLSA 'depends upon all the facts in the particular case.'" *Keeton v. Time Warner Cable*, No. 2:09-CV-1085, 2010 WL 2076813, at *2 (S.D. Ohio May 24, 2010) (citing 29 C.F.R § 791.2(a); *and Int'l Longshoremen's Ass'n, AFL–CIO, Local Union No.1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir.1991) (the determination of "joint employer [status] is essentially a factual issue"). Recognizing the inclusive and expansive nature of the definition of "employer" as set forth in the FLSA; courts have accorded "joint employer status" to two or more entities or individuals, when each independently satisfies the definition of employer as articulated by the FLSA. *See* 29 U.S.C. § 791.2 (2015); *see also, Mitchell v. Chapman*, 343 F. 3d 811, 827 (6th Cir. 2003) (all joint employers are responsible, both individually and jointly for compliance with the terms of the FLSA including those regulating overtime); *Pierce v. Coleman Trucking, Inc.*, 2005 WL 2338822 (N.D. Ohio, Sept. 23, 2005) (deeming two asbestos removal companies to be joint employers).

The Court of Appeals has established "four factors in determining whether two [individuals] are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership." *Keeton*, 2011 WL 2618926, at *3 (citing *Int'l Longshoremen's Ass'n, AFL–CIO.*, 927 F.2d at 902). Since companies, entities and individuals can be employers under the FLSA, the same test can be applied to Defendants NIELSON and JOHNSON.

Plaintiffs allege that Defendants are joint employers. Defendant NIELSON is the founder of E-Waste Systems, Inc. and/or E-Waste Systems Cincinnati, Inc, and during relevant times served as President, Chief Executive Officer, Chief Financial Officer and/or Director of E-Waste Systems, Inc. and/or E-Waste Systems Cincinnati, Inc. (Doc. 1 at ¶ 19). Defendant JOHNSON served as Treasurer, Secretary, Authorized Officer and/or a Director of E-Waste Systems, Inc. and/or E-Waste Systems Cincinnati, Inc. (*Id.* at ¶ 20).

Plaintiffs allege that Defendants NIELSON and JOHNSON jointly employed Plaintiffs at E-Waste Systems Cincinnati, Inc., which is a wholly-owned subsidiary of E-Waste Systems, Inc. and was in the business of providing customized end-to-end solutions in IT Asset Recovery, E-Waste Management, and Electronics Reverse Logistics (*Id.* at ¶ 24). Defendants NIELSON and JOHNSON jointly employed Plaintiffs at the Springdale Location to perform work that was integral to Defendants' business (*Id.* at ¶ 25). Defendants had operational control over significant aspects of Plaintiffs' day-to-day functions (*Id.* at ¶ 26). Defendants NIELSON and JOHNSON were considered principals of E-Waste Systems, Inc. and E-Waste Systems Cincinnati, Inc., and Defendants exerted control and direction over Plaintiffs' labor and working conditions (*Id.* at ¶ 27). Defendant NIELSON was recognized as the owner of the company, and exerted plenary control over the business and served as the officer to whom all workers and subordinates reported (*Id.* at ¶ 28). Defendant JOHNSON was required to report to Defendant NIELSON (*Id.* at ¶ 29). Defendant

JOHNSON was regularly at the Springdale location and supervising employees, anywhere from once a month to several times a week to nearly every day of the week (*Id.* at ¶ 30). Defendant JOHNSON had an office in the same location as Plaintiffs (*Id.* at ¶ 31). Defendant JOHNSON regularly led and directed employee meetings (*Id.* at ¶ 32). Defendant NIELSON announced to certain Plaintiffs that Defendant JOHNSON was going to help clear things up and straighten up operations (*Id.* at ¶ 33). Defendant JOHNSON provided instructions or approval concerning tools and materials need for Plaintiffs to perform their duties (*Id.* at ¶ 35). Defendants NIELSON and JOHNSON had the authority to hire, fire and discipline employees, including Plaintiffs (*Id.* at ¶ 36). Defendants had the authority to set rates and methods of compensation of Plaintiffs, for example, Defendant JOHNSON signed and executed payroll checks that were issued to Plaintiffs (*Id.* at ¶¶ 38-39). Defendant JOHNSON promised employees certain employment related benefits (*Id.* at ¶ 40). Defendant JOHNSON possessed the authority to adjust payroll or mileage figures and calculations; for example, if Plaintiffs received an underpayment due to a payroll error or miscalculation, Defendant JOHNSON would write a check immediately to correct the mistake (*Id.* at ¶¶ 40-41). Defendants NIELSON and JOHNSON had the authority to control the work schedules and employment conditions of Plaintiffs (*Id.* at ¶ 43). Defendants supervised Plaintiffs in their work to observe Plaintiff performing their e-waste recycling job duties, and provided them with feedback and instructions (*Id.* at ¶ 45). Defendant JOHNSON provided instructions and approval concerning employee travel (*Id.* at ¶ 46). Defendants NIELSON and JOHNSON had ultimate authority and control of employment records; for example, Defendant JOHNSON was an authorized signatory and/or designated as an authorized agent of E-Waste System Cincinnati, Inc.'s checking account at U.S. Bank (*Id.* at ¶ 47, citing Doc. 1-6). Defendant JOHNSON controlled the financial ledgers and accounts of the company (Doc. at ¶ 48). Defendants NIELSON and JOHNSON mutually benefitted from the work performed by Plaintiffs (*Id.* at ¶ 49). Defendants NIELSON and JOHNSON did not

act entirely independently of each other and did not been completely disassociated with respect to Plaintiffs (*Id.* at ¶ 50). Defendants NIELSON and JOHNSON shared the services of Plaintiffs (*Id.* at ¶ 51). Defendants NIELSON and JOHNSON acted directly or indirectly in the interest of each other in relation to Plaintiffs (*Id.* at ¶ 40). Thus, Plaintiffs' allege that Defendants, as joint employers, were and continue to be independently and jointly responsible for complying with the mandates of the FLSA, and are accordingly jointly and severally liable for any violations thereof.

Although Plaintiffs' argument might not survive a reasoned opposition, Defendants' default has precluded Plaintiffs from obtaining evidentiary support for this contention. Accordingly, the Court concludes that Defendants JOHNSON and NIELSON were an employers, and were independently and jointly responsible for complying with the mandates of the FLSA.

Each of the fourteen Plaintiffs declares that he was not paid any wages for hours worked between October 17 and November 18, 2014. Ten Plaintiffs worked forty hours per week for four weeks,[3] and four Plaintiffs worked forty hours per week for three weeks.[4] Accordingly, each Plaintiff has established that Defendants violated the minimum wage provisions of the FLSA and Ohio law. 29 U.S.C. § 206(a); Ohio Const. Art. II, § 34a; Ohio Rev. Code § 4111.02.

Plaintiffs Barnett, Bussard, Heard, and Medina each worked eleven overtime hours during the week of November 3-8, 2014, for which they also did not receive any compensation. (Doc. 26, Ex. A at ¶ 8, Ex. C at ¶ 8, Ex. F at ¶ 8, Ex. G at ¶ 8). Accordingly, these four Plaintiffs have established that Defendants jointly violated the overtime provisions of the FLSA and the Ohio law. 29 U.S.C. § 207(a)(1); Ohio Rev. Code §§ 4111.03(A), 4111.10(A).

Although the FLSA and the Ohio law use the same standards to determine liability, the laws

---

[3] Plaintiffs Barnett, Beal, Bussard, Ellis, Evans, Heard, Medina, Mendez, Moral Perez, and Smith worked four weeks. (Doc. 26, Ex. A at ¶ 7, Ex. B at ¶ 7, Ex. C at ¶ 7, Ex. D at ¶ 7, Ex. E at ¶ 7, Ex. F at ¶ 7, Ex. G at ¶ 7, Ex. H at ¶ 7, Ex. I at ¶ 7, Ex. K at ¶ 7).
[4] Plaintiffs Simmons, Thacker, Vogel, and Williams worked three weeks. (*Id.*, Ex. J at ¶ 7, Ex. L at ¶ 7, Ex. M at ¶ 7, and Ex. N at ¶ 7).

provide different measures of damages. Employers who violate the minimum wage and overtime compensation provisions of the FLSA are liable for back pay, plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). If the Court finds that the employer acted in good faith, it may choose to deny an award of liquidated damages. 29 U.S.C. § 260. Under the minimum wage provisions of the Ohio Constitution, an employer is liable for "an additional two times the amount of the back wages." Ohio Const., Art. II, § 34a. There is no good faith exception under Ohio law. Ohio law permits the recovery of unpaid overtime wages, but does not provide for liquidated damages. Ohio Rev. Code § 4111.10(A). Both the FLSA and the Ohio Constitution allow a prevailing plaintiff to recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b); Ohio Const. Art. II, § 34a. Finally, the minimum wage under the FLSA is $7.25 per hour, 29 U.S.C. §206(a)(1)(C), while Ohio law imposed a minimum wage of $7.95 per hour in 2014.[5]

Plaintiffs seek damages for their minimum wage claims under Ohio law, which sets a higher minimum hourly rate and permits recovery of liquidated damages equal to twice the amount of unpaid wages. Ohio Const., Art. II, § 34a. Plaintiffs seek to recover damages calculated at the minimum wage rate of $7.95, not their actual hourly rate. Accordingly, the ten Plaintiffs who worked four weeks of forty hours are each entitled to $3,816.00 in damages. The four Plaintiffs who worked three weeks of forty hours are entitled to $2,862.00 in damages.

Plaintiffs Barnett, Bussard, Heard, and Medina are also entitled to damages for their eleven hours of overtime work. These Plaintiffs seek to recover damages under the FLSA at the minimum overtime rate of $10.88 per hour, which amounts to $119.68 of unpaid overtime wages. There is no evidence before the Court suggesting that Defendants are entitled to the good faith defense in 29 U.S.C. § 260. Accordingly, Plaintiffs Barnett, Bussard, Heard, and Medina are entitled to $119.68

---

[5] Article II, Section 34a of the Ohio Constitution provides that the minimum wage is adjusted annually according to the consumer price index. *See* Ohio Department of Commerce, 2014 Minimum Wage, http://www.com.ohio.gov/documents/dico_2014minimumwageposter.pdf.

8

in unpaid overtime wages and an additional $119.68 in liquidated damages, for a total FLSA overtime damages award of $239.36. 29 U.S.C. § 216(b).

Plaintiffs also asserted violations of the Ohio Prompt Pay Act, which provides:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest[,] court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

Ohio Rev. Code § 4113.15(B). The same evidence establishes Defendants' joint and several liability under the Prompt Pay Act. Plaintiffs seek to recover liquidated damages in the amount of 6% of their unpaid wages calculated at the hourly rate of $7.95.[6] Plaintiffs Barnett, Bussard, Heard, and Medina do not seek to include their unpaid overtime hours as part of their liquidated damages award. Accordingly, the ten Plaintiffs who worked four 40 hour weeks are entitled to $76.32 in liquidated damages, while the other four Plaintiffs are entitled to $57.24.

The specific FLSA and Ohio wage damages awards attributable to each of the fourteen Plaintiffs are set forth below.

| Name | Ohio minimum wage back pay | Ohio minimum wage liquidated damages | FLSA overtime back pay | FLSA overtime liquidated damages | Prompt Pay Act liquidated damages | Total |
| --- | --- | --- | --- | --- | --- | --- |
| Eric Barnett | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| Bill Beal | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| John P. Bussard | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |

---

[6] The Court acknowledges that the $200 liquidated damages award provided in the Prompt Pay Act would exceed the percentage calculation. However, the Court will not disturb Plaintiffs' election to seek this amount of liquidated damages.

| | | | | | | |
|---|---|---|---|---|---|---|
| James Mikel Ellis | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Stephen Evans | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Keith Heard | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| Jose Medina | $1,272.00 | $2,544.00 | $119.68 | $119.68 | $76.32 | $4,131.68 |
| Angel Mendez | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| David Morales Perez | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Marquice Simmons | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| Craig Smith | $1,272.00 | $2,544.00 | $0 | $0 | $76.32 | $3,892.32 |
| Terry Thacker | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| John Vogel | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| Kevin Williams | $954.00 | $1,908.00 | $0 | $0 | $57.24 | $2,919.24 |
| | | | | | | **$51,557.60** |

Finally, Plaintiff Bussard seeks an additional $700 in damages for dental bills. Plaintiff Bussard had been enrolled in dental insurance and premiums were deducted from his paychecks (Doc. 19, Ex. C at ¶ 15). Plaintiff Bussard received dental work on October 21, 2014 and confirmed that his coverage was active on that date. (*Id.*, Ex. C, Attachment 2). After his termination on November 18, Plaintiff Bussard received additional dental work on November 28 and December 17, 2014 and assumed that his coverage remained active. (*Id.* at ¶ 17). However, Plaintiff Bussard later learned that his coverage had ended because Defendants failed to make the premiums payments in October and November. (*Id.* at ¶ 19). Plaintiff Bussard now seeks to recover $700 for those dental bills, which represents the amount of coverage that remained under his insurance policy. The foregoing deductions were not "employee authorized deductions" under O.R.C. § 41113.15, which entitles Plaintiff Bussard to double damages pursuant to O.R.C. § 4113.20. Accordingly, the $700 sought is granted. Making the total awarded that which is requested, $52,257.60.

# IV. ATTORNEY'S FEES AND COSTS

Plaintiffs seek to recover a total of $21,954.86 in attorney's fees and costs incurred in the prosecution of this action through February 2, 2017, which does not include much of the work-up done in the case against E-Waste Systems, Inc. and/or E-Waste Systems Cincinnati, Inc. *See Barnett v. E-Waste Sys., Inc.*, USDC SD OH, Case No. 1:14-cv-908 (Doc. 19, Ex. P). Nor does it include fees and costs incurred in pursuing the default judgment. The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Ohio Constitution and the Ohio Wage Act similarly provide that the court shall award reasonable attorney's fees and costs to a prevailing employee. Ohio Const. Art. II, § 34a; Ohio Rev. Code §4111.10(A).

With regard to attorney fees, a "[p]laintiff bears the burden of proving that the requested fees and expenses are reasonable." *Citizens Against Pollution v. Ohio Power Co.*, 484 F.Supp.2d 800, 808 (S.D. Ohio 2007) (citing *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999)). "In determining what is reasonable, the general approach is to 'first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate'" and "[t]here is a 'strong presumption that the lodestar represents the reasonable fee.'" *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)).

In determining the reasonableness of fees, the Court is cognizant that "[t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Further, "an award of attorney fees here encourages the vindication of congressionally identified policies and rights." *Id.* at 1134-35.

As of February 2, 2017, Barkan Meizlish, LLP incurred $20,603.50 in fees. (Doc. 19, Ex. P). This fee request is supported by itemized billing statements. (Doc. 19, Ex. P, Attachment 4). For Barkan Meizlish, the billing records reflect that a partner expended 0.80 hours at an hourly rate of $450, two associates expended a total of 60.75 hours at an hourly rate of $275, one associate expended a total of 0.40 hours at an hourly rate of $200, one paralegal expended 10.92 hours at an hourly rate of $105, and three law clerks expended a total 16.91 hours at an hourly rate of $115 (Doc. 19, Ex. P at ¶ 11).

The reasonableness of the hourly rate is supported by the affidavit of Attorney John Marshall. (Doc. 21). Attorney Marshall opines that hourly rates charged are within the fair and reasonable market value for services rendered in wage and hour litigation by attorneys with comparable qualifications in this market. (*Id.* at ¶ 6). The Court has reviewed the attached billing statements and finds that there is no evidence of duplicative, unnecessary, or overly prolonged work. Additionally, the Court finds that the documentation is "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2. (6th Cir. 1984). Accordingly, the lodestar is $20,603.50.

The lodestar amount may be adjusted upwards or downwards based on a twelve factor test. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983). Plaintiffs have not requested an upward adjustment. Similarly, the Court does not identify any circumstances warranting a downward adjustment. Accordingly, the Court finds that the requested fee award of $20,603.50 is reasonable and that Plaintiffs are entitled to such an award.

Barkan Meizlish, LLP also seeks to recover $1,351.36 in costs and expenses, consisting of the $400 filing fee, $71.41 in postage, $4.95 for legal research and skip-tracing, and $875 for

serving process as of February 2, 2017 (Doc. 19, Ex. P, Attachment 4 at 3). The Court finds that these costs and expenses were reasonable and necessary to the litigation of this action. *Landsberg v. Acton Enter., Inc.*, No. 2:05-cv-500, 2008 WL 2468868, at *4 (S.D. Ohio June 16, 2008). Accordingly, the Court will allow recovery of $1,351.36 in costs.

Finally, Plaintiffs seek leave to file an additional application for an award of fees and costs incurred in executing and collecting the default judgment. The Court will permit Plaintiffs to file an additional fee application and will address the merits of such a request at that the appropriate time.

## V. CONCLUSION

Wherefore, for these reasons, Plaintiffs' motions for default judgment against Defendant JOHNSON and Defendant NIELSON (Docs. 19 and 25) are **GRANTED**. Plaintiffs are entitled to a total of $52,257.60 in damages as allocated herein. Additionally, Plaintiffs are entitled to an award of $20,603.50 in attorney's fees and $1,351.36 in costs, totaling $21,954.86. The total amount awarded is $74,212.46. Defendants JOHNSON and NIELSON are jointly and severally liable for these amounts.

This is a Final Order in regards to Defendant JOHNSON and Defendant NIELSON, and the Clerk shall enter judgment accordingly.

The Clerk shall mail a copy of this Order and the Judgment to Defendants by certified mail or emails. Defendant JOHNSON may be served in care of Cythia Bitting at 9909 Clayton Rd. Ste. 221 St. Louis, MO 63124-1120 or by email at cbitting@alliedcos.com. Defendant NIELSON may be served at Los Altos Mail Office, 101 1st St. #493, Los Altos, CA 94022.

**IT IS SO ORDERED**

Date: 6/2/17

Timothy S. Black
United States District Court Judge

13